**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| WSOU INVESTMENTS, LLC d/b/a BRAZOS LICENSING AND DEVELOPMENT,<br><br>    Plaintiff,<br><br>  v.<br><br>DELL TECHNOLOGIES INC., DELL INC., EMC CORPORATION, AND VMWARE, INC.,<br><br>    Defendants. | Case No. 6:20-cv-00480-ADA-DTG<br>Case No. 6:20-cv-00481-ADA-DTG<br>Case No. 6:20-cv-00486-ADA-DTG<br><br>**JURY TRIAL DEMANDED**<br><br> |

**DEFENDANTS' OPPOSITION-IN-PART TO PLAINTIFF'S MOTION**
**FOR LEAVE TO AMEND INFRINGEMENT CONTENTIONS FOR U.S. PATENT NOS.**
**7,539,133, 9,164,800, AND 7,092,360**

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ...........................................................................................................1

II.   BACKGROUND ............................................................................................................3

    A.   WSOU's Preliminary Infringement Contentions Failed to Provide Notice of Its Infringement Theories ......................................................................3

    B.   WSOU's Final Infringement Contentions Failed to Provide Notice of Its Infringement Theories ...........................................................................................4

    C.   WSOU's Prior Counsel and "New Counsel" Failed to Diligently Pursue Discovery, Including Source Code Discovery ........................................................5

        1.   WSOU, Including Through Prior Counsel, Failed to Diligently Pursue Source Code Discovery......................................................................5

        2.   Defendants Produced the Relevant Source Code in December 2021 ................5

        3.   WSOU, Including via New Counsel, Failed to Diligently Pursue Source Code Discovery..............................................................................7

    D.   WSOU Seeks Leave to Amend Its Contentions Fourteen Months After the Deadline for Serving Final Infringement Contentions ...............................................9

III.  LEGAL STANDARD....................................................................................................11

IV.   ARGUMENT ................................................................................................................12

    A.   WSOU's Proposed Amendments—Which Come Over a Year After the Deadline for Final Infringement Contentions—Are Not Timely............................12

    B.   WSOU's Proposed Amendments Are Not Important to the Case...........................18

    C.   WSOU's Proposed Amendments Attempt to Broaden the Scope of the Case, Provide No Meaningful Notice or Narrowing of Issues, and Would Severely Prejudice Defendants...............................................................................19

    D.   A Continuance Would Compound, Not Cure, Any Prejudice ...............................20

V.    CONCLUSION.............................................................................................................20

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Collaborative Agreements LLC v. Adobe Sys. Inc.*,
No. 15-cv-3853-EMC, 2016 WL 1461487 (N.D. Cal. Apr. 14, 2016)...................................19

*Glob. Sessions LP v. Travelocity.com LP*,
No. 6:10-CV-671, 2012 WL 1903903 (E.D. Tex. May 25, 2012) .........................................15

*Imperium IP Holdings (CAYMAN), Ltd. v. Samsung Elecs. Co., Ltd.*,
No. 4:14-CV-371, 2016 WL 1244974 (E.D. Tex. Mar. 30, 2016) ...................................11, 12

*Implicit, LLC v. Huawei Techs. USA, Inc.*,
No. 6:17-CV-00182-JRG, 2018 WL 11182156 (E.D. Tex. July 2, 2018).............................16

*MV3 Partners LLC v. Roku, Inc.*,
No. 6:18-CV-00308-ADA, ECF No. 146 at 4 (W.D. Tex. Mar. 23, 2020).......................16, 17

*Oyster Optics, LLC v. Coriant (USA) Inc.*,
No. 2:16-cv-01302-JRG, 2018 WL 11448685 (E.D. Tex. Jan. 8, 2018)................................19

*Packet Intelligence LLC v. NetScout Sys., Inc.*,
2017 WL 2531591 (E.D. Tex. Apr. 27, 2017).......................................................13, 14, 15, 20

*Realtime Data, LLC v. Oracle Am., Inc.*,
2016 WL 11702434 (E.D. Tex. Dec. 14, 2016)....................................................................20

*Revolaze LLC v. J.C. Penney Corp., Inc.*,
No. 2:19-CV-00043-JRG, 2020 WL 2220158 (E.D. Tex. May 6, 2020) ..............................19

*Summit 6 LLC v. HTC Corp.*,
2014 WL 11514929 (N.D. Tex. Nov. 16, 2014).....................................................................14

*Uniloc USA, Inc. v. Distinctive Devs. Ltd.*,
2016 WL 11485612 (E.D. Tex. Dec. 13, 2016).........................................................13, 14, 15

## TABLE OF ABBREVIATIONS

| Abbreviation | Term |
| --- | --- |
| '133 patent | U.S. Patent No. 7,539,133 (claims 13–15 remain asserted) |
| '360 patent | U.S. Patent No. 7,092,360 (claims 1, 2, 21, 22, and 26 remain asserted) |
| '800 patent | U.S. Patent No. 9,164,800 (claims 13, 14, 16, 21, and 22 remain asserted) |
| FICs | WSOU's Final Infringement Contentions, dated June 25, 2021 |
| Br. | WSOU's Motion for Leave to Amend Infringement Contentions for '133, '360, and '800 Patents, dated August 31, 2022 |
| PICs | WSOU's Preliminary Infringement Contentions, dated October 14, 2020 |
| Proposed Amended FICs | WSOU's Proposed Amendments to its FICs, dated August 5, 2022 |

**TABLE OF EXHIBITS**

| Exhibit | Document |
|---------|----------|
| A | Preliminary Infringement Contentions in Case No. -481 ('800 patent) |
| B | Preliminary Infringement Contentions in Case No. -486 ('360 patent) |
| C | Preliminary Infringement Contentions in Case No. -480 ('133 patent) |
| D | Letter from B. Rosenthal to J. Etheridge, dated October 21, 2020 |
| E | Letter from B. Rosenthal to J. Etheridge, dated November 17, 2020 |
| F | Letter from B. Rosenthal to J. Etheridge, dated April 16, 2021 |
| G | Email Chain from M. Scott, ending April 14, 2022 |
| H | Final Infringement Contentions in Case No. -481 ('800 patent) |
| I | Final Infringement Contentions in Case No. -486 ('360 patent) |
| J | Final Infringement Contentions in Case No. -480 ('133 patent) |
| K | ███████████████ (VMW_DELL-WSOU-004335) |
| L | Email Chain from A. Blythe, ending December 2, 2021 |
| M | Production Dates for Exemplary WSOU Source Code Citations |
| N | IPR2021-00572 Final Written Decision, dated September 1, 2022 |
| O | Proposed Amended Final Infringement Contentions in Case No. -481 ('800 patent) |
| P | Proposed Amended Final Infringement Contentions  in Case No. -486 (360 patent) |
| Q | Proposed Amended Final Infringement Contentions  in Case No. -480 (133 patent) |
| R | Greenberg Traurig Source Code Review Sign-in Record |
| S | Source Code Discovery Timeline |
| T | Email Chain from N. Scharn, ending September 1, 2022 |
| U | Dell Power Edge F/N I/O Module Spec Sheet, dated 2016 |

| V | Deposition Transcript of C. Connors, dated April 27, 2022 |
|---|---|
| W | Letter from B. Rosenthal to J. Waldrop, dated August 11, 2022 |
| X | Discovery Dispute Hearing Transcript, dated April 13, 2022 |
| Y | Publication/Production Dates for Documents Cited in Support of Challenged Amendments |

## I.     INTRODUCTION

WSOU represents to the Court that its Proposed Amended FICs "include[] no new infringement theories." Br. 1. That is categorically untrue. WSOU has injected into its Proposed Amended FICs (1) theories implicating new hardware and software products for each of the '800 and '360 patents, and (2) two wholly new theories regarding the software product accused of infringing the '133 patent (the "Challenged Amendments").[1] WSOU focuses its brief on the parties' interactions surrounding WSOU's repeated demands for additional source code after the close of fact discovery. These demands were little more than a fishing expedition directed to previously unidentified instrumentalities or functionalities with no discernable relationship to the asserted claims. WSOU's focus on those interactions in its opening brief is simply a veneer of an excuse for its improper efforts to expand its contentions well after the close of fact discovery.

For the '800 and '360 patents, the Challenged Amendments relate primarily to the addition of new products, and is not based on or otherwise related to source code discovery at all. Rather, WSOU simply chose—14 months after the FIC deadline—to add accusations based on documents that were (a) publicly available before WSOU even filed these cases and/or (b) produced by Defendants nearly two years ago. Ex. Y. Even after serving its Proposed Amended FICs, despite multiple inquiries from Defendants, WSOU waited nearly a month to seek leave to amend. WSOU does not, and cannot, justify these amendments, and instead simply pretends they are not new.

Regarding the '133 patent, the source code discovery only facially relates to one of the two

---

[1] Consistent with Defendants' prior position when WSOU sought leave to amend (Case Nos. -473 (D.I. 215), -476 (D.I. 200)), Defendants do not oppose those amendments that simply add support for WSOU's already-disclosed infringement theories, such as the (batch) citations to source code for previously accused instrumentalities. Rather, Defendants oppose the new infringement theories discussed herein. Defendants will address the unintelligibility and lack of notice in WSOU's Proposed Amended FICs at the appropriate juncture.

Challenged Amendments: namely, WSOU's attempt to add a new theory of infringement relying on a completely different instrumentality—the "███████." But there is no basis to add this new theory at this late stage in the case. The very images and text WSOU now seeks to add to its contentions related to the ████████ were produced in Defendants' *first production volume in December 2020* that WSOU even cited in its June 25, 2021 FICs. Yet WSOU never identified this feature as meeting any claim element or otherwise provided disclosure accusing the ████████ Indeed, the words "██████" appear nowhere in WSOU's FICs for the '133 patent. The second Challenged Amendment for the '133 patent involves WSOU now accusing a VeloCloud feature that WSOU has long known about—the ████████—as allegedly meeting a claim limitation. The impetus for this new theory is not any alleged late-produced discovery, but rather WSOU's untimely decision to attempt to expand its case and add an alternative argument.

In any event, WSOU's retelling of the source code discovery process is both irrelevant and misleading; Defendants did not stonewall WSOU, but instead repeatedly accommodated WSOU's requests for extraneous source code. Ex. S. WSOU did not even request to review Defendants' source code before the deadline for FICs and, as discussed below, the vast majority of the source code modules WSOU cites in its Proposed Amended FICs—including code related to the ████████—*were made available for review nine months ago, in December 2021*, promptly after WSOU first requested to begin source code review. Exs. S, M. Further, as to the cited modules produced after the close of fact discovery—few of which are actually cited in WSOU's Proposed Amended FICs—WSOU's Proposed Amended FICs include no explanation for how the claims allegedly map onto any of the cited code. As WSOU has articulated no theory of infringement based on any source code modules, there is no basis for WSOU's conclusory argument that the cited code modules were needed to identify the Challenged Amendments.

WSOU's focus on source code discovery is therefore nothing more than a false pretense for WSOU's attempt to inject new accused products ('800 and '360 patents) and new infringement theories ('133 patent) at this late stage of the case.  WSOU's motion should be denied.

## II.   BACKGROUND

### A.   WSOU's Preliminary Infringement Contentions Failed to Provide Notice of Its Infringement Theories

WSOU, through its prior counsel at the Etheridge Law Group PLLC, filed these cases in June 2020.  WSOU served its PICs on October 14, 2020.  Exs. A–C.  Notably absent from WSOU's PICs was *any* explanation of how the identified features allegedly infringed the claims.  Instead, WSOU's PICs simply included images, paraphrases, or quotations from VMware marketing documents with no discernable explanation for how the descriptions of VMware's products related to the asserted claim elements.  *Id.*  Defendants informed WSOU of these and numerous other glaring deficiencies on at least October 21, 2020, November 17, 2020, and April 16, 2021.  Exs. D–F.  Specifically, as early as October 2020, Defendants informed WSOU that it ██████████

███████████████████████████████████████████████

███████████████████████████████████████

██████████████ Ex. D at 2.  Defendants explained that WSOU's ████████████

███████████████████████████████████████████████

██████████████████████████████████ *Id.*

While WSOU did not provide any explanation for how the features of the accused products allegedly mapped onto the asserted claims, Defendants understood at least the following:

- **'800 patent:** WSOU accused VMware's vSphere software product of infringing (and did not identify any accused hardware), with a focus on ██████████████████ ███████████████, and to a lesser extent ████████████████ ██████.  *See generally*, Ex. A.

- **'360 patent:** WSOU accused VMware's vSphere software product of infringing (and did



not identify any accused hardware), with a focus on ███████████████ ████████████████ and ████████████. *See generally*, Ex. B.

- **'133 patent:** WSOU accused VMware's VeloCloud SD-WAN software product, including images related ██████████████████████ feature, ████████████████ feature, ███████████ feature, and █████████████. *See generally*, Ex. C.

## B.     WSOU's Final Infringement Contentions Failed to Provide Notice of Its Infringement Theories

On December 9, 2020, consistent with the Court's Order Governing Proceedings and the then-operative scheduling order (Case No. -480, D.I. 54 at 1), VMware produced technical documents, including many of the very documents WSOU now cites (for the first time) in support of its proposed new infringement theories. Fact discovery opened in May 2021, and was originally scheduled to close on December 10, 2021. *Id.* at 2–3.

On June 25, 2021, more than a year after it filed these cases and eight months after serving its PICs, WSOU served its FICs. Case No. -480, D.I. 54 at 3. WSOU's FICs, like its PICs, consisted of images from VMware marketing documents with paraphrases and quotations from those documents, with no discernable explanation for how VMware's own product descriptions related to the asserted claim elements. *See* Exs. H–J. WSOU's FICs did not remedy the glaring omissions Defendants repeatedly identified in WSOU's PICs, thus keeping Defendants in the dark about WSOU's actual infringement theories. Indeed, in substance, the FICs remained largely the same as the PICs, accusing the same above-identified products and features.

Now, WSOU attempts to rewrite its FICs with a revisionist six-page portrayal of them that includes several mischaracterizations. Br. 1–7. As to the '133 patent, for example, WSOU states that the "██████████████████████████████████████████████████████ ████████████████████████." *Id.* at 3 (citing Ex. J at 22, 26). But tellingly, the '133 patent FICs make no mention of the ████████████ at pages 22, 26, or anywhere else in the 123 pages of WSOU's indecipherable FIC disclosure. *See* Ex. J. And, while WSOU's '133 patent FICs cite

4

VMW_DELL-WSOU-004335 (Ex. J (FICs) at 6 (citing Ex. K (produced document))), which discusses the ███████████████ (*see* Ex. K at 3–4), WSOU chose *not* to include it as part of the infringement theories in its FICs.  WSOU chose not to address this omission in its Motion.[2]

### C.   WSOU's Prior Counsel and "New Counsel" Failed to Diligently Pursue Discovery, Including Source Code Discovery

#### 1.   WSOU, Including Through Prior Counsel, Failed to Diligently Pursue Source Code Discovery

WSOU does not discuss its discovery conduct before its current counsel entered appearances, but instead attempts to start the clock with its "New Counsel," arguing that its new counsel has been diligent.  Br. 7–12.  While that is incorrect for the reasons discussed below, it also ignores a substantial portion of the relevant timeline.  Between May 3, 2021 (opening of fact discovery) and December 10, 2021 (the prior deadline for close of fact discovery (Case No. -480, D.I. 54 at 2–3)), WSOU did little to prosecute its case, and largely failed to pursue source code discovery before the then-scheduled close of discovery.  Ex. S.

#### 2.   Defendants Produced the Relevant Source Code in December 2021

WSOU did not even request to review Defendants' source code before the June 25, 2021 deadline for FICs.  Instead, it waited until November 23, 2021, just three weeks before the then-scheduled close of fact discovery and days before Thanksgiving, requesting to begin its review five business days later, on December 1, 2021 (nine days before the then-scheduled close of fact discovery).  Ex. L.  Both accused products—vSphere (accused of infringing the '800 and '360 patents) and VeloCloud (accused of infringing the '133 patent)—are large, sophisticated software products and include a significant number of features, but only a small number of features were

---

[2] While WSOU's descriptions of its FICs for the '800 and '360 patents also contain several mischaracterizations, they are not relevant to the Challenged Amendments.

even mentioned WSOU's PICs or FICs, much less have any conceivable relationship to the asserted claims.  On December 3, 2021, Defendants promptly made available for review the code they understood to be responsive based on WSOU's FICs.  *Id.*  That included the code for ██████████████████ features (accused of infringing the '800 patent), ████████████ feature implementing the ████████████ (accused of infringing the '360 patent),[3] and VeloCloud's features accused of infringing the '133 patent as well as the then-asserted '309 patent.

Despite WSOU's inadequate FICs, Defendants apparently did a good job identifying the allegedly relevant code, as the vast majority of the source code WSOU now cites in its Proposed Amended FICs was made available for review on December 3, 2021—eight months before WSOU served its proposed amendments and nine months before WSOU sought leave to amend, including:

**'800 patent.**  As to the preamble of '800 patent claim 13[4]—the single remaining asserted independent claim—WSOU lists ██████████████████████████████ ████████████ Ex. O at 46–52.  ████████████████████ *were made available for inspection on December 3, 2021.*  Ex. M.  None of these modules relate to the Challenged Amendments.

**'360 patent.**  As to claim 1 of the '360 patent, WSOU lists ██████████████████ Ex. P at 37; Ex. M.  ████████████ were made available in December 2021 and ████████████ were made available in approximately April 2022, such that WSOU had access to the code 4–8 months before seeking leave.  Ex. M.  Again, none of these modules relate to the Challenged Amendments.

**'133 patent.**  For the source code cited for the preamble of claim 13—the sole asserted independent claim—WSOU lists ██████████████████████████████

---

[3] WSOU identifies as a purported "source code deficiency" that VMware had not produced certain files related to ████████.  Br. 8–9.  Although many of the files cited in the Proposed Amended FICs were made available for inspection on December 3, 2021, Defendants accommodated WSOU's code request and do not oppose WSOU's addition of citations to the ████████ files it now cites.

[4] The PTAB on September 1 found claim 13 invalid as obvious.  Ex. N.



Ex. Q at 36–43; Ex. M.  Of those ███████████████████████████████ were available for review since December 3, 2021.  For the other modules, there are only ███████████████████████ that were produced after December 2021.  Ex. Q at 36–43; Ex. M.  Of those, ██████████████, ████████████████████, and another was produced on about May 5, both related to WSOU's previously undisclosed ████████████ theory, and two relate to ██████████████████ ███████████████████████████████.  Ex. Q at 36–43; Ex. M.

### 3.   WSOU, Including via New Counsel, Failed to Diligently Pursue Source Code Discovery

On December 3, 2021, Defendants agreed to WSOU's request to extend the schedule to allow more time for discovery and to accommodate WSOU's desire to substitute new counsel for the Etheridge Law Group—on the condition that WSOU agree to narrow the number of claims and patents asserted in these cases at specific stages of the case.  *See* Case No. -480, D.I. 125.

WSOU's new counsel, Kasowitz Benson Torres LLP, began entering appearances on December 17, 2021 (Case No. -480, D.I. 135), and 15 Kasowitz attorneys ultimately entered appearances.  Even after such appearances, however, WSOU was not diligent in its source code review.  In fact, WSOU used only five days for source code review in January 2022, and did not review source code at all in February 2022.  Ex. R at 13–17.  And in each of March 2022 and April 2022, WSOU used a total of only eight days for source code review.  *Id.* at 18–22.  Late in the discovery period, WSOU embarked on a series of fishing expeditions, making piecemeal requests for source code with dubious or no apparent relevance to the disclosures in its FICs.  Indeed, *WSOU did not identify a purported deficiency in the source code production related to the '133*

*patent until May 5, 2022*—the day before fact discovery was due to close and a year after fact discovery had opened.  Ex. S.  Because there were several days at that time where third-party Greenberg Traurig (which hosted the source code review) was not available, Defendants agreed to allow WSOU to continue its source code review after the close of fact discovery and, to avoid further discovery disputes, agreed to produce the irrelevant code modules—the vast majority of which, as expected, are not cited in WSOU's Proposed Amended FICs.  Ex. S.  In any event, where WSOU cites source code modules related to previously disclosed theories, Defendants do not oppose them.

Thus, WSOU's description of the source code review process is grossly inaccurate.  WSOU failed to pursue source code discovery for months during the fact discovery period, waiting until the eleventh hour of the then-scheduled close of discovery and well after the deadline for its FICs. And in any event, nearly all of the code WSOU actually cites in its Proposed Amended FICs was made available for inspection in December 2021.  The parties' correspondence corroborates that WSOU could not articulate a basis in its contentions to support the relevance of the more recently requested code, that WSOU often went days or weeks without providing substantive responses to Defendants' correspondence, and that Defendants nonetheless ultimately made every effort to accommodate WSOU's repeated requests for extraneous code and volumes of source code printouts far in excess of what the parties agreed to in the Protective Order.  *See* Exs. S. Defendants' repeated accommodations were not acknowledgement of so-called "discovery misdeeds" as WSOU contends (Br. 16), but accommodations to WSOU and to avoid burdening the Court with disputes as WSOU aimlessly pursued discovery in an attempt to fill the many gaps in its infringement cases.

**D.     WSOU Seeks Leave to Amend Its Contentions Fourteen Months After the Deadline for Serving Final Infringement Contentions**

On August 5, 2022, over one year after the deadline to serve final infringement contentions, WSOU served its Proposed Amended FICs.  WSOU's Proposed Amended FICs include new theories of infringement, new accused products, and unexplained lists of source code files—all while failing to remedy any of their earlier deficiencies or provide meaningful disclosure as to its infringement theories.  Even though WSOU's Proposed Amended FICs continue to fail to provide the requisite notice of WSOU's actual infringement theories, Defendants limit their opposition to the *new* infringement theories and *new* accused products disclosed in the Proposed Amended FICs.

**'800 Patent Challenged Amendments – New Accused Products.**  The '800 patent Proposed Amended FICs inject new accused products.  Where WSOU had previously accused only ***VMware's*** vSphere ***software*** product, WSOU now adds images related to ██████████ ████ (a ***hardware*** product) and VMware's ██████████████████ ████).  Ex. O at 3–4, 29–34, 44, 52.  As to the ██████████████, the Court already observed that WSOU failed to include them as accused products in its FICs.[5]  Ex. X. 4/13/2022 Hearing Tr. at 25:14–27:22, 31:25–32:18; Case No. -480, D.I. 189, 1–2; Ex. G (relaying the Court's order denying discovery on, *inter alia*, ██████████████ "given the late stage of this litigation and a review of the materials provided," which included WSOU's FICs for the '800 patent).  As to VMware's ████, WSOU offers no explanation for how this software product allegedly relates to any asserted claim element.

**'360 Patent Challenged Amendments – New Accused Products/Features.**  The '360 patent Proposed Amended FICs inject new accused products and a new infringement theory.

---

[5] WSOU's proposed additions of Dell products are self-defeating, as WSOU cites prior art systems predating the '800 patent by more than 1.5 years.  Ex. O at 4 (citing Dell-WSOU-057698).

9

Where WSOU had previously accused *VMware's* vSphere *software's* ███████ and the

███████████, WSOU now attempts to add accusations related to a new *hardware* product,

████████████████, and adds images related to VMware's ████ █████

████████████████████ ███████████████████████

█████████. Ex. P at 17, 45, 141–45.  As to ████████████████████, WSOU relies on

documents that were publicly available even before WSOU filed suit (*id.* at 141–45), yet these

hardware products were not disclosed in WSOU's FICs.  As to VMware's ██████, which was not

accused in WSOU's FICs, there has long been extensive public information about █████, and

documents produced early in the case discuss ██████.  As to ██████, WSOU fails to explain how it

relates to any element of any claim, and likewise provided no disclosure in its FICs despite that

████ is an accused feature with respect to the '800 patent, for which Defendants produced

extensive discovery beginning on December 9, 2020.  Ex. Y.

**'133 Patent Challenged Amendments – New Infringement Theories.**  Where WSOU

had previously accused ███████████████████████ feature, █████████████████

feature, ████████████, and █████████████████, WSOU now seeks to add two new

infringement theories.  First, WSOU adds a new and yet-unexplained theory regarding

██████████████████.  But WSOU's June 25, 2021 FICs never mentioned ████████████.

Ex. J.  Now, for the first time, WSOU includes images from VMware marketing documents, but

in doing so, relies primarily on a document produced nearly two years earlier on December 9, 2020

mentioning ████████████████.  Ex. Y; Ex. Q at 27–29 (citing, *e.g.*, VMW_DELL-

WSOU-001064).  WSOU also adds citations to April 2022 deposition testimony from VMware

witness Craig Connors stating that ██████████ may "████████████████████████

████████████████" (*id.* at 25), which ██████████████████████████

███████████████████.  Ex. V at 157:4–13, 176:13–19, 192:4–7.  WSOU provides no evidence of ████████████████████████████████████████████.

Second, WSOU has added a new and unexplained theory that VMware's ██████████ █████ are "ingress nodes" or "egress nodes," even though WSOU never alleged that those ███████ are such nodes in its FICs.  *See, e.g.*, Ex. Q at 30; Ex. W at 3.  Instead, in its FICs, WSOU contended—with little to no explanation—that ████████████ are ingress and egress nodes. WSOU still argues ████████████ are ingress and egress nodes, but now seeks to expand its theory (or add an alternative one) that distinct features of the product—████████████████— may also be ingress or egress nodes.  Thus, rather than narrowing its case, WSOU appears to be expanding its case and hedging its bets as to what constitutes the claimed ingress and egress nodes.

*     *     *

On August 11, 2022, less than a week after WSOU served its Proposed Amended FICs, Defendants identified the Challenged Amendments, informed WSOU that it would need to seek leave to amend, and stated Defendants' position that WSOU's proposed amendments were improper.  Ex. W.  WSOU never responded nor requested to meet and confer.  On August 31, 2022, nearly a month after it served its Proposed Amended FICs and on the night before the then-scheduled deadline for opening expert reports, WSOU filed this motion.

## III.   LEGAL STANDARD

A party seeking leave to amend its infringement contentions after the scheduled deadline for final contentions must establish good cause for amendment.  *Imperium IP Holdings (CAYMAN), Ltd. v. Samsung Elecs. Co., Ltd.*, No. 4:14-CV-371, 2016 WL 1244974, at *1 (E.D. Tex. Mar. 30, 2016).  Good cause "requires the movant to show that 'despite its exercise of diligence, it cannot reasonably meet the scheduling deadlines.'"  *Id.* (citation omitted).  In evaluating whether a party has demonstrated good cause for amendment, courts consider "(1) the

11

reason for the delay and whether the party has been diligent; (2) the importance of what the court is excluding and the availability of lesser sanctions; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *Id.* (citation omitted).

## IV.    ARGUMENT

WSOU lacks good cause to amend its contentions to add the Challenged Amendments. Each factor weighs against granting WSOU leave. *First*, WSOU's amendments are not timely; all the information WSOU needed for its new theories was available well before the June 25, 2021 deadline for FICs, including in Defendants' December 2020 production. WSOU's source code-based argument is irrelevant, as WSOU's contentions fail to explain how that code relates to any element of any claim, and thus cannot support an argument that it was necessary to WSOU's new theories. In any event, Defendants do not oppose WSOU's request to add citations to source code for previously accused instrumentalities. *Second*, the Challenged Amendments are not important to the case. WSOU fails to actually acknowledge its new theories, let alone to explain why they are important and, as discussed below, the Challenged Amendments would be futile. *Third*, the Challenged Amendments would be highly prejudicial, as they come after the close of fact discovery and in the midst of expert discovery, and would drastically expand this case at a time when WSOU should be focusing and narrowing its theories for trial. *Fourth*, a continuance would not cure any prejudice to WSOU, and would instead cause significant prejudice to Defendants.

### A.    WSOU's Proposed Amendments—Which Come Over a Year After the Deadline for Final Infringement Contentions—Are Not Timely

WSOU has not met its burden of demonstrating that it could not have met the June 25, 2021 deadline for final infringement contentions if it had exercised reasonable diligence. WSOU erroneously seeks to start the clock for timeliness based on the extraneous source code discovery—despite failing to even request to review the source before the deadline for FICs—which WSOU

belatedly pursued near the end of and after the close of fact discovery.  But that source code discovery has no bearing on WSOU's new theories and WSOU had access to purportedly relevant information well before the June 25, 2021 deadline for final contentions.

**'800 Patent – New Accused Products.**  WSOU's source code story has no relationship to WSOU's attempt to add ███████████████ or VMware ██████ as accused products at this late stage of the case, *fourteen months after the deadline to serve its final infringement contentions*.  There is extensive public information about both ███████████████ and VMware's ██████ product that has long been available, including years before WSOU filed its complaints in these cases.  In any event, Defendants long ago produced the very documents on which WSOU now relies in an effort to inject these new products into the case.[6]  *See, e.g.*, Ex. O at 3–4 (citing in support of its new ███████████████ contentions VMW_Dell-WSOU-000027, which was produced nearly two years ago and six months before the deadline for final contentions, on December 9, 2020, and Dell-WSOU-057698, which was produced on August 19, 2021); *id.* at 44 (citing in support of its contentions related to ██████ VMW_DELL-WSOU-027316, which was produced nearly two years ago and six months before the deadline for final contentions, on December 9, 2020); Ex. Y.  WSOU has no basis to add these newly accused products to the case now.  *See Uniloc USA, Inc. v. Distinctive Devs. Ltd.*, 2016 WL 11485612, at *2 (E.D. Tex. Dec. 13, 2016) ("Uniloc had over nine months (from November 19, 2012, to August 6, 2013) in which it could have sought leave to amend its infringement contentions using the information already in its possession.  Under the circumstances, Uniloc has not shown that it was diligent, and Uniloc's Motion . . . must therefore be DENIED."); *Packet Intelligence LLC v.*

---

[6] WSOU states that it required "documents produced after service of Brazos's FICs," such as the "███████████████." Br. 18.  However, Defendants do not oppose WSOU's addition of statements and images related to its previously disclosed infringement theories.

*NetScout Sys., Inc.*, 2017 WL 2531591, at *1–2 (E.D. Tex. Apr. 27, 2017) (denying motion for leave to amend infringement contentions filed after "several months of discovery" where, in its operative contentions, plaintiff had relied on data sheets for accused products and "a comparable data sheet" describing the new products had been produced in discovery and was publicly available); *Summit 6 LLC v. HTC Corp.*, 2014 WL 11514929, at *6 (N.D. Tex. Nov. 16, 2014) (denying leave to amend contentions to accuse new products, finding that "[i]n light of the publicly available information," the plaintiff "has not met its burden of proving diligence").

Indeed, the Court has already determined that WSOU failed to disclose ███████ ████ as accused products in its FICs, and on that basis denied WSOU discovery on those products. Ex. X at 25:14–27:22, 31:25–32:18; Ex. G. WSOU cannot now amend its FICs—which delineated the scope of discovery for over a year—to add these new hardware and software products at this late stage. *Uniloc*, 2016 WL 11485612, at *2; *Packet Intelligence*, 2017 WL 2531591, at *2; *Summit 6*, 2014 WL 11514929, at *6. In addition, WSOU identifies no discernable relationship between source code discovery and (i) the ███████████ and (ii) the VMware ███ software product, much less any alleged untimely produced source code modules. Regardless, all the source code modules WSOU cites for the '800 patent were made available for inspection long ago, in December 2021, further demonstrating that—despite having the code for nine months—WSOU was not diligent in pursuing discovery and seeking amendment.

**'360 Patent – New Accused Products and Feature.** There is no justification for WSOU's late attempt to add the ███████████, VMware ███, or VMware ███ as accused products or features. *See, e.g.*, Ex. P at 17, 45, 141–45. ███████████ have ***never*** been accused or otherwise put at issue in the over two-year pendency of this case. Now, relying on public documents available at the time WSOU filed its complaint, WSOU attempts to

inject them into the case. Indeed, the specification sheet available at the link WSOU cites has a 2016 copyright date, demonstrating availability well before the June 25, 2021 deadline for final contentions. Ex. U; *Packet Intelligence*, 2017 WL 2531591, at *2. Likewise, information about VMware's ███ product and ███ feature in vSphere has long been publicly available, and documentation providing extensive detail about these products/features was produced nearly two years ago—six months before the deadline for FICs—on December 9, 2020. Ex. Y. WSOU cannot justify its late attempt to expand its contentions. Moreover, WSOU has identified no discernable relationship between the ████████████████, ███, and ███ and any alleged untimely produced source code modules it cites in its Proposed Amended FICs.

**'133 Patent – New Infringement Theories.** WSOU's attempts to add new infringement theories related to VMware ███████████ and ██████████ at this late stage of the case are likewise unjustified. Information about the ██████████ and ██████████ has long been publicly available and was included in Defendants' December 9, 2020 production, six months before the June 25, 2021 deadline for FICs. Ex. Y. Yet WSOU did not accuse them in its FICs. *Glob. Sessions LP v. Travelocity.com LP*, No. 6:10-CV-671, 2012 WL 1903903, at *5 (E.D. Tex. May 25, 2012) (denying leave to amend where the plaintiff sought to amend its infringement contentions based on information that was publicly available at the time of its original contentions).

Indeed, the very document WSOU relies on most extensively in its Proposed Amended FICs for its new ██████████ theory, VMW_DELL-WSOU-001064, (*see, e.g.*, Ex. Q at 25, 27–28), was provided in Defendants' first document production on December 9, 2020, nearly two years before WSOU sought leave to amend to add its new infringement theory. Ex. Y; *Uniloc*, 2016 WL 11485612, at *2. And the ██████████ images WSOU now includes in its Proposed Amended FICs were also included in documents WSOU cited in its FICs, but that WSOU chose

15

to omit from its FICs.  *See, e.g.*, Ex. J at 6; Ex. K at 3–4.  WSOU's argument that it needed the code made available in May and June 2022 to amend its contentions is facially implausible. *Implicit, LLC v. Huawei Techs. USA, Inc.*, No. 6:17-CV-00182-JRG, 2018 WL 11182156, at *4 (E.D. Tex. July 2, 2018) (striking amended infringement contentions where plaintiff provided no "sufficient cause as to why these aspects of the Accused Products could not have been identified as part of the case prior to the production of the source code").  For example, the first source code module WSOU cites, ███████████████████ was in a folder made available for review on December 3, 2021, nine months before WSOU sought leave to amend.  *See* Ex. Q at 36; Ex. M.  WSOU then failed to identify any alleged deficiency related to the '133 patent until the day before the May 6, 2022 close of fact discovery.  Ex. S.  As to the two additional later-produced ███████ modules WSOU cites for element 13P, WSOU provides no explanation as to their relevance, undercutting any notion that these files were needed for WSOU to articulate its new ███████ theory and to seek leave to amend.  Indeed, although Defendants provided source code printouts with Bates labels, WSOU provides no pinpoint citations to give even a hint of how it contends this code is allegedly relevant to its infringement claims.

WSOU's reliance on *MV3 Partners LLC v. Roku, Inc.*, No. 6:18-CV-00308-ADA, ECF No. 146 at 4 (W.D. Tex. Mar. 23, 2020), is inapposite.  There, the party seeking leave had the relevant source code for three months before seeking leave, and received additional documents in that time period.  The Court found that the party seeking leave "was unable to fully articulate its infringement theory by the original deadline" of September 2019.  *Id.* at 2–3.  That is not the case here.  *First*, WSOU's delay is far longer than the plaintiff's in *MV3*, as the main documents WSOU relies on were served nearly two years ago, on December 9, 2020, well before the June 25, 2021 deadline for final infringement contentions.  Ex. Q at 25, 27–28; Ex. Y.  Indeed, WSOU cited

documents discussing the ███████████ in its FICs, but failed to accuse this feature.  Ex. J at 6;
Ex. K at 3–4.

    As to WSOU's argument that it needed source code to articulate its theory, Defendants
made, *inter alia*, ██████████████████████████ available for inspection—along with the
vast majority of the modules WSOU cites in its '133 patent Proposed Amended FICs—beginning
on December 3, 2021.  *Second*, WSOU has not even articulated a theory related to the two later
produced ███████████ source code modules (or ███████████ generally).  WSOU simply
included references to the source code files for every element of every claim with little to no
explanation for how it relates to the asserted claims.  *See, e.g.,* Q at 37, 43.  There is no plausible
argument that WSOU needed the two later produced source code modules in addition to the earlier
produced documents and source code files to articulate its new ███████████ theory, and the
Proposed Amended FICs' failure to articulate such a theory or provide any explanation related to
those source code files precludes any such finding.[7]  *Id.* at 37, 43.  Further, WSOU has
compounded delay upon delay, belying any argument that it has been diligent.  WSOU failed to
even request to review source code until five months after the deadline for its FICs, and more
recently delayed an additional month after serving its Proposed Amended FICs on Defendants
before seeking leave to amend on the night before the then-scheduled deadline to serve opening
expert reports.

    Accordingly, the information WSOU needed for the Challenged Amendments was
available long ago, including at least as of December 2020, and WSOU provides no justification
for its failure to add these contentions by the June 25, 2021 deadline for final infringement

---

[7]    As discussed throughout this Brief, there is no discernable relationship between the source
code discovery an any other Challenged Amendment.

contentions. Indeed, WSOU attempts to avoid this inquiry altogether by declining to even acknowledge that these are new contentions, but the Challenged Amendments are untimely.

### B. WSOU's Proposed Amendments Are Not Important to the Case

WSOU's new contentions do not clarify or focus its case, but instead seek to expand WSOU's already unintelligible allegations to preserve additional broad theories, while providing no meaningful notice. Indeed, WSOU does not even attempt to explain how they relate to the elements of any asserted claim. The "importance" factor thus weighs against WSOU's request.

**'800 and '360 Patents.** WSOU fails to explain how its new ▮▮▮▮▮▮▮▮ and VMware ▮▮▮ theories for the '800 patent and ▮▮▮▮▮▮▮▮▮▮▮, ▮▮▮, and ▮▮▮ disclosures for the '360 patent are important, and WSOU makes hardly any effort to explain how these products meet the asserted claim elements. Nor does WSOU even acknowledge that it added these newly accused products or features, even though Defendants raised the problem in their August 11, 2022 letter. Ex. W. WSOU thus makes no argument that these new contentions are important. Indeed, WSOU sought but was denied discovery on ▮▮▮▮▮▮▮▮▮ because the Court correctly found that WSOU had not accused those products in its FICs. Case No. -480, D.I. 189, 1–2 . But WSOU still fails to justify their importance or even acknowledge that they are new theories.

**'133 patent.** WSOU also does not bother to map the alleged functioning of the ▮▮▮▮ ▮▮▮▮▮▮ to any claim element, and any attempt to do so would be futile. WSOU refers to testimony from Mr. Connors regarding ▮▮▮▮▮▮, but as Mr. Connors explained, ▮▮▮



▮▮▮▮▮▮▮▮▮ Ex. V at 192:4–7; *see also id.* at 157:4–13, 176:13–19. The claims also recite determining for each packet whether a congestion condition exists *at an egress node* ('133

patent, 18:34–38), but the testimony WSOU relies on relates to ████████████ ████████████████████████████████. *Id.* at 157:4–13. Thus, these amendments would be futile and thus are also unimportant to the case. *Collaborative Agreements LLC v. Adobe Sys. Inc.*, No. 15-cv-3853-EMC, 2016 WL 1461487, *5–7 (N.D. Cal. Apr. 14, 2016) (denying leave to amend infringement contentions in part because the "amendment would be futile").

Furthermore, WSOU fails to explain why it should be allowed to change its theory as to what constitutes the recited ingress or egress nodes to include ████████████, which are strategic pieces of ████████████ used throughout the network, as opposed to the previously accused ████████████ which are essentially ████████████. Although Defendants explained that this was a new theory in their August 11, 2022 letter, WSOU has made no attempt to show that accusing the ██████ as ingress or egress nodes is important to the case.

## C. WSOU's Proposed Amendments Attempt to Broaden the Scope of the Case, Provide No Meaningful Notice or Narrowing of Issues, and Would Severely Prejudice Defendants

Defendants prepared their case—including opening expert reports, which Defendants were prepared to serve on the previously scheduled September 1, 2022 deadline before WSOU requested an extension (Ex. T at 5)—and proceeded through fact discovery based on the theories WSOU disclosed in its FICs. WSOU's attempt to implicate entirely new products (for the '800 and '360 patents) and add new infringement theories (for the '133 patent) in the midst of expert discovery (and 14 after the deadline for FICs), with trial only five months away, would be highly prejudicial to Defendants, and must be rejected. *Revolaze LLC v. J.C. Penney Corp., Inc.*, No. 2:19-CV-00043-JRG, 2020 WL 2220158, at *5 (E.D. Tex. May 6, 2020) ("By waiting until the end of discovery to amend its infringement theories, RevoLaze threatens the clear, focused path that both parties were following prior to the instant Motion. As such, the Court finds that this amendment would be materially prejudicial to JCP."); *Oyster Optics, LLC v. Coriant (USA) Inc.*,

No. 2:16-cv-01302-JRG, 2018 WL 11448685, at *2 (E.D. Tex. Jan. 8, 2018) (finding prejudice to the defendants that could not be cured by continuance where "[d]iscovery is closed, claim construction is complete, and trial draws near, looming on the horizon a mere six months away"); *Realtime Data, LLC v. Oracle Am., Inc.*, 2016 WL 11702434, at *4 (E.D. Tex. Dec. 14, 2016) ("Coupled with Plaintiff's lack of diligence, the fact that the parties are in the midst of expert discovery and trial is approximately six months away demonstrates that Defendant would experience at least some prejudice if Plaintiff were granted leave to supplement its contentions."); *Packet Intelligence*, 2017 WL 2531591, at *2 (finding prejudice to the defendant where the plaintiff sought leave to amend infringement contentions days before claim construction hearing).

### D.    A Continuance Would Compound, Not Cure, Any Prejudice

Defendants have expended extensive resources defending against these suits for more than two years, and trial is currently set for February 2023.  VMware is not willing to further delay resolution, and any decision on WSOU's late-filed motion will come well after the close of fact discovery and likely at or after the currently-scheduled October 3, 2022 deadline for service of opening expert reports.  As an accommodation to WSOU and its technical expert's medical emergency, the expert discovery deadlines were extended as much as is possible without moving the trial. *Packet Intelligence*, 2017 WL 2531591, at *2 (denying leave to amend where "the Court has already extended several deadlines in this case and adding additional products to this case at this time would risk, if not guarantee, further delay").  Thus, this factor weighs against granting WSOU leave as to its new theories.

## V.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny WSOU's Motion to the extent it seeks to add the new theories identified above.

Dated: September 21, 2022                    By:     _/s/ Barry K. Shelton_

*Attorneys for Defendants*
Barry K. Shelton
Texas State Bar No. 24055029
bshelton@winston.com
**WINSTON & STRAWN LLP**
2121 North Pearl Street, Suite 900
Dallas, TX 75201
Telephone:  214-453-6407
Facsimile:  214-453-6400

Benjamin Hershkowitz
bhershkowitz@gibsondunn.com
Brian A. Rosenthal
brosenthal@gibsondunn.com
Allen Kathir
akathir@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
200 Park Avenue
New York, NY  10166-0193
Telephone:  212.351.4000
Facsimile:  212.351.4035

Y. Ernest Hsin
ehsin@gibsondunn.com
Jaysen S. Chung
jschung@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
555 Mission Street, Suite 3000
San Francisco, CA  94105-0921
Telephone:  415.393.8200
Facsimile:  415.393.8306

Ryan K. Iwahashi
riwahashi@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
1881 Page Mill Road
Palo Alto, CA  94304-1211
Telephone:  650.849.5300
Facsimile:  650.849.5333

Nathaniel R. Scharn
nscharn@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
3161 Michelson Drive
Irvine, CA 92612-4412

Telephone: 949.451.3800
Facsimile: 949.451.4220

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on September 21, 2022, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document (which is filed under seal) through email.

*/s/ Barry K. Shelton*
Barry K. Shelton
